## Commonwealth v. Moore.

*John G. Love*, district attorney, for Commonwealth.

*N. B. Spangler* and *Ivan Walker*, for defendant.

FLEMING, P. J., July 8, 1930.—The defendant is charged with a violation of section 1016 of the Vehicle Code of 1929. This section makes it unlawful for the driver or operator of any vehicle to fail to come to a full stop before entering a through highway, when a *"Thru Traffic Stop"* sign has been erected in accordance with the provisions of section 1112 of such act. Section 1112 empowers the Secretary of Highways, with reference to state highways, and local authorities in cities, boroughs, incorporated towns, and townships of the first class, with reference to highways under their juris-

diction, to designate through highways by erecting at the entrance thereto from intersecting highways signs bearing the words *"Thru Traffic Stop,"* the word *"Stop"* to be in letters at least six inches in height, and the letters of the words *"Thru"* and *"Traffic"* to be of the form and size approved by the Secretary of Highways, notifying operators of vehicles to come to a full stop before entering or crossing such designated highway. The section makes an exception as to the hours when a traffic signal is actually in operation or where a peace officer is actually on duty directing traffic. This exception, however, has no bearing upon the instant case, as there is no traffic signal at the intersection and no peace officer was on duty directing traffic at the time the alleged violation occurred.

On March 15, 1930, the defendant was operating his automobile, in an easterly direction, along the highway between Lemont and Pleasant Gap, in this county. It is alleged that the defendant failed to come to a full stop, before entering Route 53, at Pleasant Gap, an intersection where stop signs have been erected in accordance with section 1112.

Patrolman Webber, of the State Highway Patrol, was standing near the intersection, but was not engaged in directing traffic. According to his testimony, he was "checking" traffic. This is explained as being synonymous to enforcing the automobile laws generally. The defendant was taken into custody and taken to an office of J. L. Tressel, justice of the peace, nearby. It appears that Justice Tressel maintains his principal office on East Bishop Street, Bellefonte, Pa., in Spring Township, and that he also maintains an additional office in the village of Pleasant Gap, near the intersection where the alleged offense occurred. This latter office is also in Spring Township. When taken to the office of the justice, the defendant was charged with a violation of section 1016 and requested by the justice to pay a fine and costs, amounting to $8.50. This the defendant refused to pay, stating that he would waive a hearing and enter bail for court. Defendant states that he was prepared to enter bail, and introduced into evidence a letter of attorney from the United States Fidelity and Guaranty Company, empowering the defendant to enter security in matters of the exact nature of the instant case. This was refused by the justice and the final result was that defendant left the office of the justice without either paying a fine or entering bail, and continued on his way.

On March 24, 1930, an information was made before Justice Tressel by Patrolman Webber, alleging the violation of section 1016 on March 15, 1930, as above stated. A copy of such information and notice to appear was forwarded to and received by the defendant.

This is admitted by the defendant. Subsequently, defendant entered his own recognizance, in the sum of $18.80, for his appearance in this court. It appears that the warrant issued was never served upon defendant, but that defendant waived hearing and entered security for his appearance here, as above stated.

Counsel for the defendant has moved the discharge of the defendant for the following reasons:

1. That there is no evidence here that when the first information was made on March 15, 1930, a written notice was given to the defendant, as required by the Vehicle Code.

2. That, as to the second information made on March 24, 1930, there is no evidence that a notice was given to the defendant, as required by the Vehicle Code.

3. That even if such notice had been given, it was invalid and illegal, as the act requires such notice to be given within seven days.

4. That the burden is upon the Commonwealth to prove that the thru stop sign was official; that the highway approached had been designated by the proper authority as a thru highway.

5. That the location of the stop sign is improper, being across the highway to be entered upon, the proper location being on the same side on which the vehicle is approaching.

6. That the sign on the side on which the vehicle was approaching is on the right and not in compliance with section 1112.

7. That the justice before whom the action was brought maintains an office on East Bishop Street, Bellefonte, Pa., in Spring Township, and an additional office at Pleasant Gap, in Spring Township, where the information in the instant case was made.

We shall approach consideration of these objections in our own order, disposing of those of lesser merit first and considering at greater length those which, we feel, are of greater importance to the motoring public.

We shall take judicial notice that the markers erected at the intersection where the violation is alleged to have been committed were and are in the size and form, as to lettering and other requirements, as specified by section 1112 of the Vehicle Code, and that they are erected at proper places at the intersection. We shall also take judicial notice that the highway upon which the defendant was about to enter has been officially designated by the Department of Highways as a through highway.

When a matter is a matter of common and general knowledge, does not depend upon uncertain testimony, and has attained sufficient notoriety as to make it safe and proper to assume its existence without proof, courts will take judicial notice: 15 R. C. L. 1057, § 2. Judicial notice is based upon very obvious reasons of convenience and expediency, operating to save the time, trouble and expense which would be lost in establishing in the ordinary way facts which do not admit of contradiction: 15 R. C. L. 1056, § 1.

The signs erected, with which we are concerned in the instant case, have been repeatedly viewed by us and are, beyond contradiction, the signs used by the Department of Highways throughout the Commonwealth, and the highway upon which the defendant was about to enter is a through highway for travel from central Pennsylvania and country lying to the north and west thereof to the eastward. That it has been so designated by the Department of Highways is clearly shown by the erection of similar stop signs at every intersection along its entire distance between Bellefonte and Lewistown, where it meets the Lakes to Sea Highway and the William Penn Highway. To require the Commonwealth to subpoena officials and records of the Department of Highways would serve no good purpose herein. We, therefore, find no merit in reasons 4, 5 and 6 advanced by the defendant as grounds for his discharge.

Objection one requires no answer. The testimony shows that the justice of the peace and the patrolman saw what appeared to be error as to notice, and, after counseling with the district attorney, abandoned such original proceeding and attempted to begin a new one. This brings us, however, to the consideration of what appears to be an apparent conflict between section 1202 of the Vehicle Code of 1929 and sections 1203 and 1211 of the same act.

Section 1202 is entitled "Proceedings by Information and Warrant." This

section provides that summary proceedings under the act, or any violation of a local ordinance, rule or regulation enacted by the authority of such act, shall be commenced by the filing of an information; that within seven days after such information has been made, the magistrate shall send by registered mail to the person charged, at the address shown on the records of the department, a notice in writing of the filing of such information, together with a copy thereof and a notice to appear within ten days of the date of the written notice. If the person to whom such notice is directed fails to appear within ten days, a warrant may be issued and served in a lawful manner. It is evident that the legislative intent was to permit those persons alleged to have been guilty of minor offenses against the Vehicle Code to go on their way and to adjust their obligations to society for such violations without being detained and made to answer instanter such accusations.

Section 1211, entitled "Limitation of Authority for State Highway Patrolmen," provides that such patrolmen are declared to be peace officers, thus broadening their powers to embrace violations other than those against the Vehicle or Tractor Codes, and are given police power and authority to arrest on view, when in uniform, without writ, rule, order or process, any person violating any of the provisions of this act.

Do the words "any of the provisions of this act" so nullify the provisions prescribed in section 1202 as to enable the patrolmen to arrest on view, regardless as to whether the alleged offense is punishable by summary conviction or not? We are firmly of the opinion that they do not and were not so intended by the legislature. In section 1201 it is provided that all informations charging violations of "any of the provisions of this act, except in cases where the offense is designated a felony or misdemeanor," must be brought within fifteen days after the commission of the alleged offense. Arrests on view necessitate the immediate filing of informations if the constitutional rights of the defendant are to be preserved. Arrests on view, therefore, may be made only in cases where the offense is designated as a misdemeanor or a felony. This is further made clear by section 1203 (a) of the Vehicle Code, which specifically provides that peace officers, such as state highway patrolmen as constituted by section 1211, may arrest on view any person violating "any of the provisions of this act," when in uniform and displaying a badge or other sign of authority, "where the offense is designated a felony or a misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person." The patrolman, in the instant case, was clearly without authority in arresting the defendant on view on the night of March 15, 1930, for an alleged violation of section 1016. Such being a matter punishable by summary conviction, his only course was pursuant to the procedure outlined in section 1202.

The complaints voiced in objections two and three have been waived by the appearance of the defendant and his entry of bail for court. The record fails to disclose the giving of notice prescribed by section 1202 (a) of the Vehicle Code, but defendant waived such as well as the issuance of a warrant by his entry of bail.

Defendant complains that the justice before whom he was taken and the action was brought maintains an office on East Bishop Street, Bellefonte, Pa.—not within the borough limits, but within the Township of Spring and just beyond such borough limits—and that he also maintains an additional office at Pleasant Gap, in Spring Township, where the information in this case was made. This complaint carries the inference that it is illegal for the jus-

tice to maintain an additional office at Pleasant Gap, and, such being an illegal office, that defendant was not "brought before the nearest available magistrate," as required by section 1201 of the Vehicle Code. Is this contention correct? Can a justice of the peace maintain an additional office or offices within the territorial limits of the jurisdiction for which such justice has been commissioned?

Inasmuch as this question appears never to have arisen under the exact facts of the instant case, and inasmuch as the particular justice was elected by the electorate of Spring Township at large, and has been commissioned by the Governor for said township at large, and not for any particular precinct thereof, one would be inclined to hold that the additional office in question, being within such township, would be legal. On first consideration of the question, the further fact of the convenience afforded to the inhabitants residing in the vicinity of the additional office would tend to confirm such finding, the general purpose of the existence of justices of the peace to be the bringing of justice in minor matters nearer to the homes of the people: 16 R. C. L. 330, § 2.

But, after careful consideration, there appear to be other and more substantial matters to be considered. This office "is connected with the judicial department of the state government, and a justice of the peace is, to a certain extent, a judicial officer, for most of his powers and duties are of a judicial nature and concern the administration of justice:" 16 R. C. L. 330, § 2, and cases cited. Thus viewing the fact, the office of a justice of the peace is in fact a court. "To constitute a court there must be a place appointed by law for the administration of justice, and courts must be held at the place provided by law, except for the determination of actions, special proceedings, and other matters not requiring a jury, when they may, by consent of the parties therein, be held at some other place:" 7 R. C. L. 992, § 21, and cases cited. It could not be reasonably contended that a justice of the peace could set up an additional office or court exclusively for the trial of automobile violations, authorized to be disposed of by him in a summary manner, nor for the dispensing of criminal jurisdiction alone. If such were to be permitted to be established, it must be for the administration of justice in all matters properly administered by him.

If additional or branch offices are maintained by justices of the peace, confusion is certain to arise in civil matters. Defendants are not personally conducted to the place for hearing in civil matters, but respond to a summons to appear at a future date. With a justice maintaining several offices, it is certain to occur that defendants will mistake the exact office to which they have been summoned and appear at the wrong one, only to have judgment rendered against them at the right one by default. There are certain to follow many requests for appeals *nunc pro tunc* and for general relief from the confusion caused thereby. Or, in lieu of honest mistakes, designing persons can readily fabricate such excuses for their non-appearance and clog courts of record with their complaints. Furthermore, a plaintiff residing or being in the vicinity of the branch office and using the same can summon a defendant residing or being in the vicinity of the principal office to appear at such branch office for a hearing; or, still further, one can purposely institute his suit in such manner as to cause gross inconvenience and injustice to the defendant, and without cause other than to annoy. Under such possible conditions, the question of convenience is wholly erased and the existence of such branch office would defeat entirely the reason for the continuance of the

office of justice of the peace, to wit, the bringing of justice in minor matters nearer to the homes of the people.

But an additional reason, more patent in the matter of summary convictions for automobile violations, is that such branch offices, if allowed to be set up, will clearly defeat the legislative intent of section 1201 of the Vehicle Code. The clear purpose in requiring any alleged offender who is to be tried summarily to be taken before the nearest available magistrate was to defeat the nefarious practices of "fining squires," who, forgetful of the true intent and meaning of automobile regulation, and with the aid and assistance of like forgetful constables and other peace officers, sought to use their offices solely for their personal gain at the expense of an oppressed motoring public. To permit a justice of the peace to make himself "the nearest available magistrate" by sprinkling branch offices at advantageous points throughout his bailiwick is clearly contrary to the intent of the Vehicle Code of 1929. As a judicial officer, he must maintain his *court;* that is to say, the place where he hears and decides controverted questions of fact, as well as of law, at one designated and permanent location within his jurisdiction. We see no harm in his administering oaths, taking acknowledgments and performing other ministerial acts in a branch office, but when assuming the role of a judicial officer, and when requiring persons to appear before him, either criminally or civilly, for the determination of issues of law or fact, such appearances must be had, and hearing conducted, at one point definitely and permanently established. We would have a right to summon jurors, witnesses and litigants and try cases in Millheim, State College, Philipsburg, and elsewhere within the county, were the rule to be otherwise. Certainly some would be convenienced greatly were we empowered so to do, but, on the other hand, it is likewise as certain that a great number would also be inconvenienced. "It is usually made the duty of each county in a state to provide at the county seat a courthouse, and to keep the same in repair, and even in the absence of statute it is generally agreed that county, circuit, and district and other courts held for the county must sit at such county seat, and that they have no authority or jurisdiction to convene for the trial of actions or proceeding involving issues of fact at any other place in the county except by consent of the parties, or except where expressly so authorized by statute:" 7 R. C. L. 993, § 22, and cases cited. The rights of a justice of the peace are no greater than ours. It is rarely, if at all, that he is called upon to decide a controversy which does not involve an issue of fact, and especially in determining the guilt or innocence of one summarily charged with the violation of the motor vehicle laws. The defendant, in the instant case, did not consent to the justice assuming jurisdiction of his case at his branch office at Pleasant Gap, nor is there any statute expressly authorizing the justice to do so. That a statute is required, or at least intended by the legislature to be required, to enable a justice of the peace to open a branch office is evidenced by the passage of the Act of April 3, 1899, P. L. 27, authorizing justices of the peace to establish branch offices at fairs, etc. We are of the opinion that the patrolman, in the instant case, did not comply with section 1201 of the Vehicle Code of 1929, and that the proceedings were not had before the nearest available magistrate.

For the reasons noted above, we are of the opinion that the defendant was not taken before the nearest available justice of the peace, and must, therefore, be discharged.

And now, July 8, 1930, the defendant is discharged. Costs to be paid by the County of Centre. From S. D. Gettig, Bellefonte, Pa.